Weldoh, J.,
delivered, tbe opinion of tbe court:
On June 17,1891, the claimant filed a petition, in which he substantially alleged, that in the years 1853 and 1855- the Jacarilla Apache Indians stole and destroyed property of the value of $2,850 belonging to the decedent; that in 1876 the claim was filed in the Interior Department, and that subsequently the said Department allowed the sum of $900 of said claim, and that said amount has not been paid. Upon the 1st day of June, 1892, the claimant filed an amended petition, expressing a willingness to accept the said sum of $900 in full satisfaction of the claim: Inasmuch as the claimant did not desire to reopen the said allowance, and as the defendants had not done so, the said claimant moved for a judgment upon the alleged finding of said Department and the failure of either party to reopen the same.
The allowance of the motion is resisted by the defendants upon the ground that it is not an “ examined, approved, and allowed case” within the meaning of the act of March 3, 1891, só as to bring it within the terms' of séction 4, which is as follows:
“ * * * Provided-, That all unpaid claims which have heretofore been examined, approved, and allowed by the Secretary of the Interior, or under his direction, in pursuance of the act of Congress making appropriations for the current and contingent expenses of the Indian Department and for fulfilling treaty stipulations with various Indian tribes for the year ending June thirtieth, eighteen hundred and eighty-six, and for other purposes, approved March third, eighteen hundred and eighty-five, and subsequent Indian appropriation- acts, shall have priority of consideration by such court.
“And judgments for the amounts therein found'due shall be rendered, unless either the .claimant or the United States shall elect tó reopen the case and try the same before the court, in which event the testimony in the case given by the witnesses and the documentary evidence, including reports of «Department agents therein, may be read as depositions and proofs.”
On January 4,1894, the defendants filed the following motion to dismiss election:
“ Come the defendants, by the Assistant Attorney-General, and move the court to dismiss the election to accept the allowance and award made by the Secretary of the Interior October 25,1886, and for grounds of motion sbow as follows:
*202 “ (1) That said case is not an allowed and preferred case;
“ (2) That the allowance made by the Secretary of the Interior is null and void;
“ (3) That said claim was not one authorized by law to be examined and allowed by the Secretary of the Interior;
“ (4) That the Secretary of the Interior had no authority to find said defendant Indians liable for said alleged depredation;
“ (5) The defendant Indians are not liable for said alleged depredations under the treaty referred to by the Secretary of the Interior of 1852 (10 Stat. L., p. 979).”
The claimant, in electing to abide by the alleged allowance of the Secretary, claims to do so under the foregoing provisions of the fourth section of the statute.
The defendants, although they intend to reopen the case, do not want to be subject to that clause of the law which provides “that the party electing to reopen the case shall assume the burden of proof;” and hence have filed this motion, raising the question whether the action of the Department was such as to give the claimant the right to elect and thereby subject the defendants to the burden of proof.
The burden of proof is often of great importance in a judicial controversy, and the result is frequently determined by the decision of the question as to who has the burden of proof.
“Whoever seeks to be benefited by any fact is bound to establish it, and the burden of proof is accordingly said to be upon him.” (Abbott’s Law Dictionary, 172.) It is alleged, with other reasons in the motion of the defendants, “ that this case is-not an allowed and preferred case.” That said claim was not one authorized by law to be examined and allowed by the Secretary of the Interior. . The other objections to the claim alleged in the motion of defendants are in substance and law the same as the objection stated.
If the claim is not examined, approved, and allowed within the meaning of the law, then the claimant has no right to. elect, but must establish his claim by sufficient and competent evidence; and the defendants are not subjected to the responsibility of having opened the case within the meaning of the statute.
The following are the proceedings incident to this claim by the officers of the United States:
The Indian agent submitted the claim to a council of the Indians, who denied all knowledge of the depredation, and in *203 .bis report to the Commissioner of Indian Affairs, bearing date of September 1, 1875, says: “ Owing to tbe length of time that has elapsed since the depredation was committed, find it impossible to obtain any further evidence than contained in the affidavit accompanying this claim.”
On the 1st day of October, 1886, special agent of the Interior Department made the following report:
“1. In conclusion, the evidence heretofore alluded to — and it is all that could be gathered in the neighborhood of said depredations, for I went up to Mora in search of information with regard to the same — while it is altogether unsatisfactory as to said second depredation, appears to me to be sufficient to prove that the first depredation was committed as alleged in said petition: that by it the said Juan de Jesus Mares lost about seventy-five Mexican beef cattle; that none of said seventy-five cattle were ever recovered; that private satisfaction or revenge was not sought; that the average value of said cattle was $12.00 per head, making the sum of nine hundred dollars ($900.00).
“ Bespectfully submitted. “ S. S. Scott,

u U. 8. Special Agent.”

u 2. Bxtract from report of A. B. Upshaw, Acting Commissioner of Indian Affairs, .dated October 21, 1886.
“ Upon a review of the record, this office submits the following as its conclusion upon the claim:
“ 1. That the Charge in the petition of the depredation in June, 1855, is not sustained by the evidence.
“ 2. That on the 13th of June, 1853, at Agua Negro, in the Territory of New Mexico, Jaccarilla Apache Indians committed a depredation on claimant’s property, whereby claimant lost 75 head of cattle, of Mexican breed, of the value of $12 per head, aggregating the sum of $900.
“ 3. That claimant is not chargeable with any contributory negligence in said loss.
“ 4. That at the time of the commission of said depredation claimant was a citizen of the United States.
“ 5. That at the date of said depredation the several tribes of Apache Indians, including the Jaccarillas, were in treaty relations of amity with this Government, and by articles 1, 2, 3, and 4 of such treaty are chargeable for same injury. (Vide 10 Stat., p. 79.)
“■Wherefore it is recommended that the claimant be allowed for the sum of $900.
“Very respectfully, “A. B. Upshaw,
uActing Commissioner.”
*204 (See also letter of H. L. Muldrow, Acting Secretary of the-Interior, dated October 25, 1886, concurring in the recommendation of the Commissioner of Indian Affairs, and approving allowance of $900 of October 21,1886, a copy of which we here insert, the same being filed with the papers in the case in court.)
“3. Copy of letter of Acting Secretary of the Interior H. L. Mul-drow, approving allowance recommended by Commissioner of Indian Affairs.
“DEPARTMENT OE THE INTERIOR,
“ Washington, D. C., October 25, 1886.
“ The Commissioner oe Indian Aeeairs :
“Sir: Your report of the 21st instant, submitting the claim of Juan de Jesus Mares, of Taos County, N. Mes., amounting to $2,530, for compensation for depredations alleged to have been committed in 1853-’55, by Jicarilla Apache Indians, has been considered, and your finding, viz, that claimant sustained loss to the amount of $900, with your recommendation that that amount be allowed in full satisfaction of the claim, is concurred in.
“The claim is hereby returned, to be included by you in the list of depredation claims to be submitted to Congress, as required by law.
i i y cry respectfully,
“H. L. Muldrow,

“Acting Secretary.

“6049 Ind. Div., 1886. 5 inclosures.”
In answer to a call made upon the Department by the court, the following return and reply were made:
“Department oe the.Interior,
Oeeice oe Indian'Aeeairs,
“ Washington, D. C., September 8, 1891.
“The honorable The Secretary oe the Interior :
“Sir: I have the honor to acknowledge receipt of your reference dated July 21,1891, of the communication of the Court of Claims bearing date July 18,1891, inclosing a motion signed by Pettis and Agnew, attorneys for claimant, requesting the Secretary of the Interior to 1 furnish to the Court of Claims, .that the same may be used on the trial’ of the cause entitled ‘Yincente Mares, administrator of widow of Juan de Jesus Mares, deceased, v. The United States, No. 2591, Indian Depredations,’ now pending in said court, any information or papers (or duly authenieated copies of the same if preferred) *205 supposed to be oa file in tbe Interior Department, as set forth ia the accompanying rule allowed by Chief Justice Richardson.
“In reply I have the honor to report, with the return of said communication and its inclosures, that the depredation claim of Juan de Jesus Mares, No. 2345, was, pursuant to the Act of March 3,1885 (23 Stat., 370), duly investigated by this office and reported to the honorable Secretary of the Interior October 21, 1886, with the recommendation that it be allowed in the sum of $900, which recommendation was concurred in by the Secretary in letter to this office of October 25, 1886, and was, with all the original papers in the case, transmitted to the Speaker of the House of Representatives January 5,1887, by the honorable Secretary of the Interior for the consideration of Congress, and is now supposed to be in the files of the office of the Clerk of the House of Representatives. (See Executive Document No. 77, H. R., Forty-ninth Congress, second session.)
“Very respectfully,
“A. W. Belt,
11 Acting Commissioner.”
It is insisted by the defendants that there was no jurisdiction in the Secretary of the Interior to.consider the claim; and if he made an allowance, as contended for by claimant, it was without authority of law, and is not an • allowed case within the meaning of the statute, so as to give the right of election and adoption on the part of the claimant.
The contention of the defendants is, that there being no express stipulation in the treaty to pay for depredations, no responsibility can arise from a general obligation to keep the peace and to treat honestly and humanely all citizens of the United States.
The act of 1885 requires that the Secretary, in his allowance of a claim, shall designate “ the date and clause of the treaty creating the obligation of payment.” The general agreement to keep the peace would ordinarily make the parties responsible for all damages arising from a failure to perform that general duty; but is it such an obligation as will constitute a basis upon which the Secretary may predicate an allowance and a report to Congress'? While Congress might be willing to trust the Department with the decision of the question of fact, whether a depredation had been committed and the application of a plain provision of a treaty agreeing to pay for such depredation, it does not follow that they would submit to the decision *206 of tbe Department tlie question of allowance founded upon the general provision of the treaty and arising from construction, and not from express stipulation.
In the case of Marks, et al vs. The United States and the Bannock Indians (28 C. Cls. R., 146) the court had occasion to consider the question of Indian liability under a treaty where there was a want of amity. In that case the treaty provided that in case certain conditions were complied with upon the part of the party suffering from the depredation, the amount of it was to be taken from the annuities or other monies due the Indians from the United States. In this case, there is no such treaty, and the question arises can the Secretary of the Interior deduce a liability from the general provisions of the treaty, so as to confer jurisdiction under the act of 1885.
The act provides that the Secretary shall cause a complete list of claims tó be made, showing the name and address of the claimant, the date of the alleged depredation, by what tribe committed, the date and clause of the treaty creating the obligation of payment to be made and presented to Congress at its next session. The Secretary in this case has referred to Sections 1, 2, 3, and 4 of the treaty (10 Stat. L., 979) as the ground of the liability of the Indians, but it is, if any, a general liability without any undertaking in terms upon the .part of the Indians to pay.
The act of 1891 recognizes as an allowed claim such a claim as the Secretary “examined, approved, and allowed” in pursuance to the act of Congress,* and if the Secretary had no jurisdiction of a claim unless there is an express provision of a treaty providing for payment and annuities applicable to such payment, then his action in allowing the claim is without authority of law. The obligation of the Indians in the treaty .of July 1,1852, is a general obligation, and while the terms of the treaty are broad, there is no specific and express agreement for the payment of the damages of Indian depredations. The Secretary of the Interior had no power to examine and allow the claim, inasmuch as there was no undertaking upon the part of the Indians, and being without authority, the finding is not an allowed case within the meaning of the statute, and the claimant has no power to elect, so as to shift the burden of proof to the defendants. The motion of the defendants is allowed.