LEIGHTON v. UNITED STATES.

APPEAL FROM THE COURT OF CLAIMS.

No. 413.   Argued November 12, 13, 1895. — Decided March 2, 1896.

The party who, under the provisions of § 4 of the act of March 3, 1891, c.
538, 26 Stat. 853, elects to reopen before the Court of Claims a case under
that act heard and determined by the Commissioner of Indian Affairs,
thereby reopens the whole case, irrespective of the decision by the Com-
missioner, and assumes the burden of proof.

The jurisdiction conferred upon the Court of Claims by the first jurisdic-
tional clause in the first section of that act is confined to property taken
by Indian tribes in amity with the United States; and as it appears in
this case that the Indians who committed the injury to the claimant were
at the time engaged in hostilities against the United States, the Court of
Claims was without jurisdiction to render a judgment against the United
States, even though the hostilities were carried on for the special pur-
pose of resisting the opening of a military road.

The same result is reached practically if the claim is regarded as within
the jurisdiction of that court under the second jurisdictional clause of
the first section of that act.

There is nothing in the legislation prior to the act of 1891 which binds the
government to the payment of this claim.

THIS case is before us on appeal from a judgment of the
Court of Claims, dismissing the claimant's petition. The
amended petition on which the case was tried, after stating
the facts of the depredation, the citizenship of the claimant,
and the amity of the Indian tribe, alleged that the claim had
been filed in the Interior Department, allowed on December
5, 1873, for $3025, and reported to Congress, March 27, 1874;
and, again, on November 29, 1887, allowed for $2500, and
reported to Congress. It further alleged that the property
was worth $5005, and for that sum prayed judgment.

After the commencement of the suit in the Court of Claims
the claimant filed this election to reopen:

"Now comes the claimant, Alvin C. Leighton, and elects
to reopen the claim set forth in the petition in this cause and
try the same before the court.

" And he avers that the allowance made in said claim was

erroneous in this respect, that the Commissioner of Indian Affairs and the Secretary made an allowance of $2500 by fixing the value of the mules, on account of which claim is made in said petition, at $125 and of the horses at $100 each, whereas the allowance should have been for $5005, the value of the mules being $255 each and of the horses $185 each.

"And the claimant refers to the evidence taken under the rules of this court as well as that presented to the Interior Department in support of this allegation of error.

"The claimant does not seek to disturb the findings or award of the Commissioner of Indian Affairs and Secretary of the Interior in any other respect than as above set forth, but admits that the same are correct in all other respects."

This was done under authority of the last part of section 4 of the act of March 3, 1891, c. 538, 26 Stat. 851, 853, which reads: "All unpaid claims which have heretofore been examined, approved and allowed by the Secretary of the Interior, or under his direction, . . . shall have priority of consideration by such court, and judgments for the amounts therein found due shall be rendered, unless either the claimant or the United States shall elect to reopen the case and try the same before the court, in which event the testimony in the case given by the witnesses, and the documentary evidence, including reports of department agents therein, may be read as depositions and proofs."

The United States having filed a traverse, the case was submitted to the Court of Claims, by which court findings of fact were made, and among them that the property was taken and carried away by Indians belonging to the Ogallalla band of the Sioux tribe; that at this time the Ogallalla band "was in separate treaty relations with the United States, under treaty dated October 28, 1865, proclaimed March 17, 1866, 14 Stat. 747, and were receiving annuities thereunder;" and that such band "under its principal chief, Red Cloud, was at the time of said depredation in armed hostility against the United States in resisting the military authorities in the opening of a military road, and the establishment thereon of military posts, and maintaining the same along what was known

as the 'Boazman Road,' extending from Fort Laramie, in Wyoming, to Fort Smith, in Montana," and was "not in amity with the United States."

*Mr. William B. King,* (with whom was *Mr. Charles King* on the brief,) for appellant.

*Mr. John B. Sanborn* filed a brief for appellant.

*Mr. Assistant Attorney General Howry* for appellees.

MR. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

The first matter to be considered is the effect of the claimant's election to reopen the case. On his part it is contended that it only permitted a new inquiry as to the amount and value of the property taken and carried away; that the liability of the government had been settled by the award and allowance of the Secretary of the Interior, and was no longer a matter of dispute. On the other hand, it is claimed by the government that it opened for consideration and judgment both the amount of the depredation and the fact of liability precisely as though there had been no action on the part of the Secretary of the Interior. We think the contention of the government is correct. The statute gives either the claimant or the United States the right to reopen the case and try the same before the court — not a part, but the whole of the case. If neither party had elected to reopen, the claimant would have been entitled to a judgment for the amount of the allowance, such judgment to be paid as ordinary judgments of the Court of Claims. He would not have been required to furnish any further proof than the action of the Secretary, which action would have been sufficient, both as to the liability of the government and the amount of the loss. But when he elected to reopen, it was not within his power to reopen the case only partially, and, accepting the determination of the Secretary as conclusive upon the question of liability, ask simply an inquiry as to the amount of his loss and

judgment for a larger sum. There is no suggestion in the statute and no warrant therein for a partial reopening of the case. When reopened it stands a new case, to be considered and determined by the court. Of course, it is for the interest of the claimant to consider the question of liability settled and have the case opened only as to the amount of the loss. So, on the other hand, it might, in any case be for the interest of the government to have the amount concluded by the action of the Secretary, and the question of liability only opened for examination, but no such limitation is named in the statute. The case when opened is opened as a whole, and the only difference between this and any new case which has never been filed in the department and considered by the Secretary is that the party electing to reopen has the burden of proof.

Counsel for claimant further contend that the second clause of the first section of the act of 1891 gives jurisdiction to the Court of Claims of cases which have been " examined and allowed by the Interior Department ;" that by section 5 it is provided : " The court shall determine in each case the value of the property taken or destroyed at the time and place of the loss or destruction, and, if possible, the tribe of Indians or other persons by whom the wrong was committed, and shall render judgment in favor of the claimant or claimants against the United States, and against the tribe of Indians committing the wrong, when such can be identified." No other measure or condition of liability is named. Hence, given a case of which the Court of Claims has jurisdiction, (and a claim allowed by the Interior Department is one,) the only duty of the court is to ascertain the amount of the loss, the tribe of Indians by whom the wrong was committed, and render judgment against the United States and such wrongdoing tribe. In other words, the fact of jurisdiction determines the question of liability.

We cannot assent to any such construction. The anomaly which would be created thereby demonstrates its incorrectness, for the effect would be that, if the claim had never been filed in the department, it would be subject to the conditions

specified in the first clause of the section defining jurisdiction. If it had been filed and was either allowed or pending for examination on the 3d of March, 1885, none of such conditions of liability would exist, and the simple inquiry would be as to the amount of the loss. In other words, the mere act of the claimant in filing his claim in the department establishes the liability of the government. Of course, this is impossible. Further, by section 4, and that applies to every case, the Attorney General is required to "file a notice of any counter-claim, set-off, claim of damages, demand, or defence whatsoever of the government or of the Indians in the premises." Under this, every defence is open to the government. The clause quoted from section 5 does not determine the rule of liability, but only the duty of the court when the liability has been established. What, then, is the condition of liability in the case of an allowed claim, which either party shall elect to reopen? It must be found in some act of Congress, and is either that prescribed in the first clause of the first section of this act, or in some other statute.

The condition of liability prescribed in the first jurisdictional clause of the first section does not exist, because, by the finding, the Indians who committed the depredation did not belong to a tribe "in amity with the United States." It is true, counsel suggest that the Indians were carrying on hostilities for only a special purpose, to wit, resisting the opening of a military road. We fail to appreciate the argument that because hostilities were carried on for only a single purpose, and not for the mere sake of fighting generally, the tribe engaged in such hostilities was nevertheless still in amity. Indeed, beyond the fact of hostilities, the treaty between the different tribes of Sioux, including the Ogallalla band, executed by said band on May 25, 1868, and proclaimed February 24, 1869, 15 Stat. 635, implies the existence of war, for it commences with this declaration: "From this day forward all war between the parties to this agreement shall forever cease."

Neither do we find in the legislation prior to the act of 1891 anything which binds the government to the payment of this

claim. The act of June 30, 1834, sec. 17, 4 Stat. 731, and sec. 2156, Rev. Stat., which provide for compensation for depredations by Indians, each contains the limitation found in the first jurisdictional clause of the act of 1891 of "amity with the United States." The act of May 29, 1872, sec. 7, 17 Stat. 190, carried into the Revised Statutes as sections 445 and 466, contemplates a report by the Secretary of the Interior of the nature, character and amount of claims presented "under laws or treaty stipulations for compensation." The laws in force, as we have seen, mention only depredations by Indians belonging to a tribe "in amity with the United States." The last treaty with the Ogallalla band of Indians, prior to these depredations, was that of October 28, 1865, 14 Stat. 747, which contained, on the part of the Indians, an engagement that they were subject to the exclusive jurisdiction and authority of the United States, and also bound and obligated "themselves individually and collectively " "to cease all hostilities against the persons and property of its citizens." Now, if this treaty was not entirely superseded by hostilities which actually existed between the Ogallalla Indians and the United States, as is undoubtedly the rule when war arises between absolutely independent nations, it still is far from a promise on the part of the Indians to pay for damages caused during any such hostilities. While a breach of a contract similiar to this between individuals might very likely give rise to an action for damages, yet no such rule can be enforced in reference to obligations created by a treaty. It is a promise on the part of the tribe to keep the peace, and not a promise to pay if the peace is not kept. Especially should this be the construction in view of the fact that many of the treaties between the United States and Indian tribes contain not only a promise to abstain from hostilities, but also a specific stipulation that, in case of a breach of such promise, compensation shall be made out of the tribal funds, or otherwise. The absence of any such express provision in this treaty, the Indians being under the care of the United States and its wards, renders it improper to hold that by its terms the tribe had bound itself to pay for all damages which it might cause during a period

of actual hostilities. Nor is this a matter in which the government is uninterested. In case of an award by the Court of Claims the United States become in fact, if not in form, the primary and a solvent judgment debtor. The recourse provided over against the Indian tribe, while it may be certain as to amount, is uncertain as to collection, and before any judgment should be rendered binding the United States it is familiar and settled law that the statute claimed to justify such judgment should be clear and not open to debate.

It follows, therefore, that though under the terms of the second jurisdictional clause the Court of Claims had jurisdiction over this claim, yet the case having been reopened by the claimant the Court of Claims properly proceeded to inquire into its merits, and correctly found that there was no law or treaty upon which to base a liability of either the United States or the Indians.

The judgment is

*Affirmed.*