WeldoN, J.,
delivered tbe opinion of tbe court:
On February 9, 1894, tbe claimant, as administrator, filed a petition in this court, in which be alleged inter alia, that on tbe 24th of May, 1854, tbe said decedent was tbe owner of horses, mules, cattle, and other personal property to tbe value of $2,970, which on said- day in tbe Territory of New Mexico were taken and destroyed by tbe Cheyenne Indians without cause or provocation on tbe part of said decedent, or person in charge; and that at tbe time of such depredation tbe said Indians were in amity with tbe United States. It is further alleged in said petition that a claim for said property was filed *206 in tlie Department of the Interior on the-day of May, 1857, for payment; but said amount was not paid, nor any part thereof, although the said sum of $2,970 was approved by the Secretary of the Interior, or under his directions, on the 9th day of February, 1891. The claimant therefore prays that he may have judgment against the United States for said sum. Although there is no specific allegation in the petition that the claimant elects to take and accept the amount of the award, the petition in substance is an election to do so, and the motion is to set aside such election so as to prevent the shifting of the burden of proof from the claimant to the defendants. The motion of the defendants is as follows:
“ Come the defendants, by the Assistant Attorney-General, and move the court to dismiss the claimant’s election to accept the allowance and award made by the Secretary of the Interior, and for grounds of motion show as follows:
“ (1) That the case is not an allowed and preferred case.
“ (2) The allowance by the Secretary of the Interior is null and void.
“ (3) The claim was not one authorized by law to be examined and allowed by the Secretary of the Interior.
“ (4) The Secretary of the Interior had no authority under the law to find the defendant Indians chargeable with said depredation.
“(5) The defendant Indians were not chargeable with said depredation under the treaty referred to by the Secretary of the Interior.” (7 Stat. L., 255.)
The election of the claimant to accept the finding of the Interior Department is founded on the third proviso to the fourth section of the act upon which this suit is brought, Act of March 3, 1891 (1 Supp. to Rev. Stat., 2d ed., 913), and is as follows:
“Provided, That all unpaid claims which have heretofore been examined, approved, and allowed by the Secretary of the Interior, or under his direction, in pursuance of the act of Congress making appropriations for the current and contingent expenses of the Indian Department, and for fulfilling treaty stipulations with various Indian tribes, for the year ending June thirtieth, eighteen hundred and eighty-six, and for other purposes, approved March third, eighteen hundred and eighty-five, and subsequent Indian appropriation acts, shall have priority of consideration by such court. And judgments for the amounts therein found due shall be rendered, unless either the claimant or the United States shall elect to reopen the case and try the same before the court, in which event the testimony in *207 the case given by the witnesses, and the documentary evidence, including reports of Department agents therein, may be read as depositions and proofs: Provided, That the party electing to reopen the ease shall assume the burden of the proof.”
The purpose of the present motion is to relieve the defendants in reopening the case from the responsibility of having thrust upon them the burden of proof. If the theory of the claimant be true, the finding of the Secretary makes a j>rima facie case, and upon that prima facie case he is entitled by his election to recover the exact amount reported by the Secretary, unless the defendants elect to reopen the case. All the elements of a successful proceeding are embraced in the finding and it becomes the basis of a judgment. According to this theory it is like a promissory note or bill of exchange upon which a suit is brought in a common-law court; it proves itself, makes a prima facie case, and casts upon the opposite party the burden of showing its defects and imperfections.
The issue presented by this record is, whether the finding by the Secretary of the Interior as alleged in the petition is such a finding as the Secretary was authorized to make, and upon which the claimant can predicate a demand for judgment, and thereby subject the defendants to the consequence of having thrown upon them the burden of proof if they elect to contest the amount and try the cause upon its merits. It is insisted by the defendants, with other objections, that “the claim was not one authorized by law to be examined and allowed by the Secretary of the Interior.” It is argued that under the treaty referred to by the Secretary (7 Stat. L., 255) no authority existed for him to find the Indians chargeable with the amount of the alleged depredation. The fourth section of the treaty of the date of July 6, 1825, found in the above statute, which embraces the subject of depredations on both sides, does not in terms provide for compensation to the injured party against the wrongdoer, nor does it by necessary implication provide that satisfaction is to be made by the tribe to the injured party for depredations committed by the Indians.
The obligations which the tribe assumes are that the guilty party shall be delivered up, to the end that he may be punished agreeably to the laws of the United States, and that the chiefs shall to the utmost of their power exert themselves to recover the property stolen from the citizens in order that the same may be delivered to the party aggrieved.
*208 Id the case of Mares (29 C. Cls. R., 197) it is beld that “a case is not an allowed and preferred case if the Secretary of the Interior had no power to make an award,” and even where there is a general stipulation requiring the Indians to keep the peace, this is not sufficient to authorize the Secretary to make an award of damages so as to bind the rights of the defendants as in a properly allowed case. The Act of March 3,1885 (Stat. L., 370), requires the Secretary to designate “the date and clause of the treaty creating the obligation of payment.” This does not authorize the Secretary to act where there is no express stipulation in a treaty. (Mares, supra.)
In the case of Leighton (29 C. Cls. R., 288) it is said: “A treaty obligation to cease all hostility against persons and property is not an obligation to pay depredation claims.” The Supreme Court in its recent decision .affirming the judgment of this court says:
“The last treaty with the Ogalalla band of Indians, prior to these dépredations, was that of October 28, 1805 (14 Stat. L., 747), which contained, on the part of the Indians, an engagement that they were subject to the exclusive jurisdiction and authority of the United States, and also bound, and obligated “themselves individually and collectively” “to cease all hostilities againstthe persons and property of its citizens.” Now, if this treaty was not entirely superseded by hostilities which actually existed between the Ogalalla Indians and the United States, as is undoubtedly the rule when war arises between absolutely independent nations, it still is far from a promise on the part of the Indians to pay for damages caused during any such hosi ilities. While a breach of a contract similar to this between individuals might very likely give rise to. an action for damages, yet no such rule can be enforced in reference to obligations created by a treaty It is a promise on the part of the tribe to keep the peace, and not a promise to pay if the peace is not kept. Especially should this be the construction in view of the fact that many of the treaties between the United States and Indian tribes contain not only a promise to abstain from hostilities, but also a specific stipulation that, in case of a breach of such promise, compensation shall be made out of the tribal funds or otherwise.
“The absence of any such express provision in this treaty, the Indians being under the care of the United States and its wards, renders it improper to hold that by its terms the tribe had bound itself to pay for all damages which it might cause during a period of actual hostilities. Nor is this a matter in which the United States is uninterested. In case of an award by the Court of Claims the United States become in fact, if not *209 in form, tbe primary and a solvent judgment debtor. Tbe recourse provided over against tbe Indian tribe, while it may be certain as to amount, is uncertain as to collection, and before any judgment should be rendered binding the United States it is familiar and settled law that the statute claimed to justify such judgment should be clear and not open to debate.
“ It follows, there!ore, that though under the terms of the second jurisdictional clause the Court of Claims had jurisdiction over this claim, yet the case having been reopened by the claimant the Court of Claims properly proceeded to inquire into its merits, and correctly found that there was no law or treaty upon which to base a liability of either the United States or the Indians.” (161 U. S. R. 291.)
In the Mares Case the terms of the treaty are much stronger than in this case, yet the court said in that case:
“ The general agreement to keep the peace would ordinarily make the parties responsible for all damages arising from a failure to perform that general duty; but is it such an obligation as will constitute a basis upon which the Secretary may predicate an allowance and a report to Congress! While Congress might be willing to trust the Department with a decision of a question of fact, whether a depredation had been committed, and the application of a plain provision of a treaty agreeing to pay for such depredation, it does not follow that they would submit to the decision of the Department the question of an allowance founded upon the general provisions of the treaty and arising from construction and not from express stipulation.”
The Secretary of the Interior had no power to examine and allow the claim, inasmuch as there was no undertaking upon the part of the Indians; and being without authority, the finding is not an'allowed case within the meaning of the statute, and the claimant has no power to elect, so as to shift the burden of proof to the defendants.
The order of the court is that so much of the amended petition as prays for judgment upon claimant’s election not to reopen the case is dismissed, without prejudice to the rest of the petition.