Peelle, J.,
delivered tbe opinion of tbe court:
Tbe question in this case arises on tbe defendants’ motion to dismiss tbe claimants’ election for judgment on tbe award made by tbe Secretary of tbe Interior.
Tbe facts are briefly these:
In tbe years 1864 and 1865 depredations were committed by tbe defendant Indians on tbe property of tbe claimants in Weld County, then Territory of Colorado, whereby they suffered tbe loss of horses, mules, and cattle aggregating in value, as averred in their petition, the sum of $44,335.
They filed a claim for their loss in tbe Department of tbe Interior, and tbe facts pertaining thereto were investigated, and resulted in an allowance by tbe Secretary in favor of tbe claimants of $17,734 October 10,1887.
Tbe Indian Depredation Act, March 3, 1891, tbe last paragraph of section 4 (26 Stat. L., 851) provides:
uProvided, That all unpaid claims which have heretofore been examined, approved, and allowed by tbe Secretary of the Interior or under his direction, in pursuance of tbe act of Congress making appropriations for tbe current and contingent expenses of the Indian Department and for fulfilling treaty stipulations with various Indian tribes, for the year ending June thirty, eighteen hundred and eighty-six, and for other purposes, approved March third, eighteen hundred and eighty-five, and subsequent Indian appropriation acts, shall have priority of consideration by such court, and judgments for the" amounts therein found due shall be rendered unless either tbe *595 claimant or the United States shall elect to reopen the case and try the same before the court, in which event the testimony in the case given by the witnesses and the documentary evidence, including reports of Department agents therein, may be read as depositions and proofs: Provided, That the party electing to reopen the case shall assume the burden of proof.”
Under that provision of the act, the defendants not having elected to reopen the case, the claimant elected to accept the amount of the award so made in full of his claim, and filed his motion for judgment thereon accordingly.
Thereupon the defendants. filed their motion to dismiss the claimants’ motion on the ground (1) that the treaty between the United States and the defendant Indians of September 17, 185L (Revision Indian Treaties, p. 1048), under and by virtue of which the Secretary of the Interior sought to charge the defendant Sioux Indians for the loss so sustained by the claimants, had never been formally ratified and proclaimed, and was not therefore a treaty within the meaning of the Act of March 3,1885 (23 Stat. L., 376), and (2) that the treaty of February 18, 1861, with the Cheyenne Indians (12 Stat. L., 1163), contained no provision for the payment of depredation claims, and did not therefore authorize the Secretary of the Interior to examine and allow the claim as against them.
The defendants by their motion contend that the allowance thus made by the Secretary of the Interior was not authorized by the Act of March 3,1885 (supra), and thereby to avoid the necessity of assuming the burden of proof on election to reopen the case.
As the treaty February 18, 1861, with the Cheyennes was for the cession of lands and not for the payment or satisfaction of depredation claims, it is conceded by the claimant that it comes within the decision in the Mares Case (29 C. Cls. R., 197) and did not therefore authorize the Secretary of the Interior to make the award against them.
By the treaty negotiated September 17, 1851 (supra), with the Sioux and other tribes of Indians, there was a provision for the payment of certain annuities for the period of fifty years, but when it came up for ratification in the Senate, “the Senate advised and consented to the ratification with an amendment reducing the period for the payment of annuities from fifty to ten years and giving the President the right to *596 extend the period five additional years. The modification was sent to the tribes for their concurrence, and the defendant Sioux Indians and some other tribes consented, while others refused, and the treaty was never formally proclaimed. It was, however, acted upon by Congress and appropriations were annually made to carry it into effect with the defendant Indians from March 3, 1853 (10 Stat. L., 238), until March 3, 1865 (13 Stat. L., 550), including the extension of five years made by the President.” Leighton's Case (29 C. Cls. R., 288).
By the Appropriation act of March 3, 1885 (supra), it was • provided, among other things, that in expending the sum appropriated therefor “the Secretary of the Interior shall cause a complete list of all claims heretofore filed in the Interior Department, and which have been approved in whole or in part and now remain unpaid, and also all such claims as are pending but not yet examined, on behalf of citizens of the United States on account of depredations committed, chargeable against any tribe of Indians by reason of any treaty between such tribes and the United States, including the name and address of the claimants, the date of the alleged depredations, by what tribe committed, the date of examination and approval, with a reference to the date and clause of the treaty creating the obligation for payment, to be made and presented to Congress at its next regular session.”
The Secretary was also authorized to cause additional testimony to be taken “ to enable him to determine the kind and value of all property damaged or destroyed by reason of the depredations aforesaid, and by what tribe such depredations were committed,” and his report to Congress was to “include his determination upon each claim,” and he was also to report “ what funds are now existing or to be derived by reason of treaty or other obligation out of which the same should be paid.”
The Act of May 15, 1886 (24 Stat. L., 44), continued the investigation thus begun and authorized the Secretary to include in his examination and report “claims, if any, barred by statute.”
By the provision of the act of 1891, heretofore quoted, the act of 1885 was, in effect, incorporated into the former for the purposes there stated, so that the question for our determination is as to the validity of the treaty of 1851, which was *597 negotiated with numerous tribes, ratified by the Senate with an amendment, as stated, to which the Sioux Indians gave them consent, while other tribes refused, and for that reason the treaty was never ratified or formally proclaimed.
The provision of the treaty relied upon by the Secretary of the Interior as authorizing his allowance of the claim is contained in article 4 thereof, and is as follows:
“The aforesaid Indian nations do hereby agree and bind themselves to make restitution or satisfaction for any wrongs committed, after the ratification of this treaty, by any band or individual of their people on the people of the United States whilst lawfully residing in or passing through their respective territories.”
Although the treaty was not formally proclaimed, yet both the Congress and the President recognized the validity and binding force of the same as to the United States — the Congress by making appropriations to carry the treaty into effect from 1853 to 1865, and the President by extending the time for the payment of annuities for five additional years, as provided by the Senate amendment might be done, while the Secretary of the Interior recognized the same as binding between the Indians and a citizen. The appropriations thus made, amounting to nearly a million of dollars, were paid to and accepted by the Indians as in conformity with the treaty. _
“A treaty is primarily a compact between independent nations,” and, like our Constitution and laws made in pursuance thereof, is “the supreme law of the land.” (Head Money Cases, 112 U. S., 580, 598.)
“A treaty,” says the Century Dictionary, “is a league or contract betwen two or more nations or sovereigns, in modern usage formally signed by commissioners properly authorized, and solemnly ratified by the several sovereigns of the supreme power of each State.”
What is there stated' is unquestionably the law as between absolutely independent nations, and if the same rules of law were applicable to treaties between the United States and the Indian tribes, as this court inclined to believe at the time of its early decisions under the act of 1891, then the claimants’ motion would have to be denied.
But the language of the Supreme Court in its opinions in the Maries and Leighton Oases (161 U. S., 297, 291), seem to imply *598 that the rules of law applicable as between inri ependent nations do not apply to treaties between tbe United States and tlie Indian tribes, thereby modifying to some extent the views of this court as expressed in the Leighton and Love Cases (29 C. Cls. R., 288, 332).
~~Hence we are not inclined to apply rigid rules of construction in the case at bar,, especially as the political departments of the Government have recognized the validity and binding-force of the treaty, not only as between themselves and the Indian parties thereto, but as between the Indians and the citizen.
While the compact or contract is not clothed with the legal or customary requirements of a treaty, its recognition by the political departments of the Government as of binding force, and the acceptance and enjoyment by the Indians of the fruits thereof, entitle the citizen to a liberal construction in his favor. Of this the Government could not in good faith complain, and since the Indians received the benefit of the money appropriated under its provisions to their use, they could not be heard to deny the validity of the treaty in respect of restitution or satisfaction for wrongs committed by them on the citizens of the United States.
f' We are therefore of the opinion that the action of the Congress and the Executive in respect of the treaty aforesaid and the acceptance by the Indians of the fruits thereunder were sufficient to constitute the contract a treaty/within the intent of Congress, as expressed in the act of 1885 (supra), and that the fourth article thereof was sufficient to charge the defendant Indians with the depredations thus committed.
It follows that the Secretary of the Interior was authorized by the act of 1885 to examine and allow the claim, and the defendants’ motion is denied. Judgment will, therefore, be allowed, unless the defendants, during the present term, file their election to reopen the case.
Howry, J., was not present when this case was tried and took no part in the decision.