Peelle, J.,
delivered the opinion of the court:
.Judgment was originally entered in this case on stipulation of the parties as provided by section 4, act of March 3,1891 (26 Stat. L., 851). But later the defendants filed a motion for a new trial under Eevised Statutes, section 1088, assigning as grounds therefor, among other things, that the defendant *204 Indians were not in amity with the United States at the dates of the depredations alleged in the petition, to wit, February 4, 1865, and October 23, 1865, which motion, after elaborate and able arguments on both sides, was sustained, holding that the defendant Indians were not in amity with the U nited States from July 28, 1864, to October 28, 1865. (See opinion, 32 C. Cls. R., 585.)
The question now presented arises on the claimant’s motion for a rehearing of the defendants’ motion, on the ground, as stated, that the court erred in holding that “the defendant Indians were not in amity at the date of the second depredation, October 23,1865,” and, second, that the court erred in holding “that want of amity was a sufficient ground for new trial, when jurisdiction in the court and liability of the defendant Indians existed under the second clause of the first section of the act of March 3, 1891, under treaty stipulations.”
Treaties were negotiated with the various bands of the Sioux Indians on the following dates: Minneconjou Sioux, October 10, 1865 (14 Stat. L., 695); Lower Brule Sioux, October 14, 1865 (14 Stat. L., 699); Two Kettle Sioux, October 19, 1865 (14 Stat. L., 723); Blackfeet Sioux, October 19, 1865 (14 Stat. L., 727); Sans Arcs Sioux, October 20,1865 (14 Stat. L., 731); Yank ton ais Sioux, October 20, 1865 (14 Stat. L., 735); Onk pah pah Sioux, October 20, 1865 (14 Stat. L., 739); Upper Yanktonais Sioux, October 28,1865 (14 Stat. L., 743); Ogalalla Sioux, October 28,1865 (14 Stat. L., 747).
The negotiations began when the first council was held Oc tober 6,1865, with the Minneconjou band, as reported by the commission appointed therefor. (Beport Secretary Interior, 1865, pp. 721,722.) And for that reason the claimant contends that the amity of the defendant Sioux Indians began October 6, or at all events not later than the date of the execution of the first treaty, viz, October 10, 1865, with the Minneconjou band.
If the action were against the Minneconjou band, or if the -evidence showed that the Indians belonging to that band were the depredators, the court would hold that amity, as to that particular band, began October 10,1865, by reason of the treaty of peace signed on that date.
But, as stated in the opinion referred to:
“ The evidence does not satisfy the court as to what particular band committed the depredations, so we have considered the political entities under the general name of Sioux, *205 Cheyenne, and Arapahoe; but if it be contended that the Oga-lalla or Brule Sioux were the only Sioux Indians who committed the depredations in connection with the other Indians named, which is probable, they were unquestionably hostile during the period stated below.”
But while the court was, from the evidence, unable to segregate any particular band or tribe as the depredators, the locality of the depredations pointed to the Ogalalla and Brule bands as the probable guilty parties.
The treaty with the Ogalalla band was executed October 28, 1865, and as that band was an integral part of the Sioux nation, the court reached the conclusion that, in respect of the nation, amity did not begin until the signing of the last treaty, which was with the Ogalalla band at the time stated, and to this conclusion the court feels constrained to adhere.
If, however, it should appear in any case hereafter that a depredation has been committed by a particular band of Sioux Indians, or by the Cheyenne or Arapahoe tribes, or by Indians belonging thereto, the amity of such tribe or baud will be presumed from the date the treaty of peace was signed by them respectively, as hereinbefore set out.
The second ground for a rehearing, viz, that the court erred in holding “that want of amity was a sufficient ground for a new trial, when jurisdiction in the court and liability of the defendant Indians existed under the second clause of the first section of the act of March 3, 1891, under treaty stipulations,” we supposed had been settled both by this court and by the Supreme Court, and for these reasons did not advert to the question in our opinion on the defendants’ motion for a new trial.
However, as the claimant’s counsel again calls our attention' to the matter, we will consider the question.
The provision of the treaty upon which the claimant relies is article 4 of the treaty of September 17,1851 (Revised Indian Treaties, p. 1048), which reads:
“The aforesaid Indian nations do hereby agree and bind themselves to make restitution or satisfaction for any wrongs ■ committed, after the ratification of this treaty, by any band or individual of their people, on the people of the United States, whilst lawfully residing in or passing through their respective territories.”
In the recent case of Moore (32 C. Cls. R., 593) we held that although the treaty as modified by the Senate was signed by some of the tribes and refused by others, still the recognition *206 of tbe treaty both by tbe Congress and tbe Executive and tbe acceptance by tbe Indians of the appropriations made thereunder were sufficient to charge them with depredations; and that in respect thereto, “they could not be heard to deny the validity of the treaty,” in consequence of which the court held that the Secretary of the Interior was authorized by the act of March 3,1885 (23 Stat. L., 376), to examine and allow the claim as one chargeable against the Indians by reason of the treaty.
The question in that case went to the right of the Secretary of the Interior under the act of 1885 to examine and allow the claim in view of the failure of some of the tribes, with whom the treaty was negotiated and originally signed, to consent to the modification thereof made by the Senate.
In the case at bar the question is as to the jurisdiction of the court under the second clause of the first section of the act of 1891 to adjudicate the claim under the provisions of the treaty, notwithstanding at the time of the depredations the defendant Indians were not in amity with the United States.
In other words, the claimant contends that under the provisions of the treaty a claim existed in his favor at the time of the passage of the act of 1885, and that, whether it originated in war or in peace, the act of 1885 authorized the Secretary of the Interior to examine and allow it as a claim chargeable against the Indians by reason of the treaty between them and the United States.
And that being the status of the claim at the time of the passage of the act of 1891, the court is authorized to adjudicate the same under the second clause of section 1 of the act, which reads ;
“Such jurisdiction shall also extend to all cases which have been examined and allowed by the Interior Department and also to such cases as were authorized to be examined under the act of Congress making appropriations for the current and contingent expenses of the Indian Department and for fulfilling treaty stipulations with various Indian tribes for the year ending June thirtieth, eighteen hundred and eighty-six, and for other purposes, approved-March third, eighteen hundred and eighty-five, and under subsequent acts, subject, however, to the limitations hereinafter provided.”
The position taken necessarily assumes that if there was a treaty containing a provision for indemnity like the one quoted, then the act of 1885 authorized the Secretary of the Interior *207 to examine and allow such claim, though it may have originated in war.
In the Leighton Case (29 C. Cls. R., pp. 288, 305) the court said: “But a provision in a treaty providing in express terms for the payment of depredation claims can not be construed to cover claims arising by acts of war in the absence of some express provision of law or treaty.”
In the same case the Supreme Court (in 161 U. S. R., 291, 295) said: “What, then, is the condition of liability in the case of an allowed claim which either party shall elect to reopen? It must be found in some act of Congress, and is either that prescribed in the first clause of the first section of this act, or in some other statute.” * * * “ Neither do we find in the legislation prior to the act of 1891 anything which binds the Government to the payment of this claim.” And this, too, because the prior acts down to 1834 contained, as the court says, “ the limitations found in the first jurisdictional clause of the act of 1891 of amity with the U nited States.” Therefore “ amity with the United States” was the condition of liability prior to the passage of the act of 1891; and the effect of that act in respect of allowed claims under the act of 1885, when reopened, is, as the court, in the same case, at page 294, says: “ The case, when opened, is opened as a whole, and the only difference between this and any new case which has never been filed m the Department and considered by the Secretary is that the party electing to reopen has the burden of proof.”
Now, can any different rule be applied to cases arising under express provision of treaties for the payment of depredation claims? Certainly not, as the court’s jurisdiction is measured, not by the treaty, but by the provisions of the act of 1891. That act provides that before any judgment shall be rendered against the United States it must appear that the property taken or destroyed was “by Indians belonging to any tribe, band, or nation in amity with the United States,” or, as the court, in the case last cited, says, page 297, “ It is familiar and settled law that the statute claimed to justify such judgment should be clear and not open to debate.”
In the paragraph of the opinion following it is said: “It follows, therefore, that though under the terms of the second jurisdictional clause the Court of Cairns had jurisdiction.over this claim, yet the case having been reopened by the claimant, the Court of Claims properly proceeded to inquire into its merits, *208 and correctly found that there was no law or treaty upon which to base a liability of either the United States or the Indians.”
In effect the holding is, that though the court, “under the terms of the second jurisdictional clause,” acquires jurisdiction over an allowed claim, yet, if reopened, the court may proceed to inquire into its merits, and if it finds that the Indians charged were not in amity with the United States no liability attaches to either the United States or the Indians.
In the Leighton Oase {supra) the provision of the treaty relied upon was in substance that the Indians “individually and collectively” would cease all hostilities against the person and property of the citizens of the United States; but this the court said “is a promise on the part of the tribe to keep the peace, and not a promise to pay-if the peace is not kept. Especially should this be the construction m view of the fact that many of the treaties contain not only a promise to abstain from hostilities, but also a specific stipulation that, in case of a breach of such promise, compensation shall be made out of the tribal funds or otherwise.”
But as there was no such express agreement in the treaty in that case, the court ruled that it would be “improper to hold that by its terms the tribe had bound itself to pay all damages which it might cause during a period of hostilities.”
From the language of the opinion it may be inferred that, where by treaty a tribe of Indians had “ bound itself to pay all damages which it might cause during a period of hostilities,” the same could be enforced under the act of 1891. This is the contention of the claimant in the case at bar, and he insists that the provision of the treaty relied upon meets the requirements of an obligation on the part of the tribe to pay claims originating in war.
The language of the treaty is: “ The aforesaid Indian nations do hereby agree and bind themselves to malee restitution or satisfaction for any-wrongs committed, after the ratification of this treaty, by any band or individual of their people on the people of the United States whilst lawfully residing in or passing through their respective territories.”
• The language limits the “restitution or satisfaction” to wrongs committed “on-the people of the United States whilst lawfully residing in or passing through their respective territories,” thereby precluding the idea of paying all damages caused “during a period of hostilities.”
*209 Tbe words “wrongs committed” are tbe only words used in tbe provision of tbe treaty cited wbicb could by any stretch of imagination be construed to mean damages caused “during a period of hostilities.” Tbe use of tbe words rather preclude the idea of war, as acts of war may be justifiable and “no breach of tbe treaty of peace,”
Justifiable self-defense is a natural right which can not be renounced, and when violence offered will admit of no other remedy than the exertion of open force it may be lawfully exercised. (Vattel’s Law of Nations, p. 418.)
The language of the treaty will not bear the construction contended for by the claimant, because the provision relied upon is not specific — i. e., it does not by express terms obligate the tribe to pay for damages caused during a period of hostilities or war, and therefore the language of the Supreme Court in the Leighton fíase (supra) floes not apply. This being so, we •need not now decide whether under such circumstances the United States would be liable.
The claimant’s motion for a rehearing is therefore overruled.
Howry, J., was not present when this case was tried and took no part in the decision.