Filed 6/28/21  In re L.V.A. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re L.V.A., a Person Coming Under the Juvenile Court Law. | |
| | D078493 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| | (Super. Ct. No. J519862B) |
| Plaintiff and Respondent, | |
| v. | |
| J.S., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Marion Gaston, Judge.  Conditionally reversed and remanded with directions.

Rich Pfeiffer, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Lisa M. Maldonado, Senior Deputy County Counsel, for Plaintiff and Respondent.

# I
# INTRODUCTION

J.S. (Father) appeals from an order denying his Welfare and Institutions Code section 388 petition.[1]  Father asserts that the juvenile court and the San Diego County Health and Human Service Agency (the Agency) failed to comply with the requirements of the Indian Child Welfare Act (ICWA, 25 U.S.C. § 1901 et seq.) by failing to adequately inquire as to whether Father has any Indian ancestry and by failing to provide notice.  We agree that the Agency did not conduct adequate inquiry, but we disagree that the Agency was required to provide notice. We therefore conditionally reverse the order and remand the matter for the limited purpose of compliance with the ICWA.

# II
# BACKGROUND

Given the limited scope of this appeal, we provide an abbreviated summary of the dependency proceedings and focus on the facts relevant to the ICWA findings at issue.  "In accord with the usual rules on appeal, we state the facts in the manner most favorable to the

---

[1]    All further unspecified statutory references are to the Welfare and Institutions Code.

dependency court's order." (*In re Janee W.* (2006) 140 Cal.App.4th 1444, 1448, fn. 1.)

The Agency filed a juvenile dependency petition on behalf of L.V.A. in January 2019 immediately after birth alleging that Mother was unable to care for L.V.A. due to substance abuse. L.V.A. was placed with the relatives of the presumed father, A.V. However, genetic testing later confirmed that A.V. was not L.V.A.'s father.

In October 2019, Mother's reunification services were terminated after repeated failures to comply with the case plan. A hearing was then scheduled pursuant to section 366.26 to implement a permanent plan for L.V.A. Shortly thereafter, Father was identified and confirmed as L.V.A.'s father. The petition was amended to reflect that Father was the biological parent, but he was not provided reunification services. Father was subsequently arrested for robbery and has since had only video visitation with L.V.A., who remains with A.V.'s relatives.

During his initial contact with the Agency, Father claimed Indian ancestry through the "Blackfeet Tribe."[2] During another conversation, Father referenced the "Blackfoot" tribe. On his ICWA inquiry form, Father wrote that his maternal grandfather or great-grandfather in Kansas or Michigan was a "Blackfoot" tribal chief.

Father identified his brother, E.B., and sister-in-law, A.J., as individuals who would have additional information regarding his

---

[2] An ICWA inquiry was also initiated as to Mother because she claimed Indian ancestry through the Apache Tribe. Mother is not a party to this appeal and does not contest the inquiry that was conducted.

3

ancestry. The Agency left three voicemail messages with E.B. but never received a response. The Agency did speak with A.J. but only discussed L.V.A.'s placement, not Father's ancestry. Father also identified a paternal relative, A.S., but it is unclear how A.S. is related to Father, and there is no indication in the record that the Agency contacted her.

Based on the information provided by Father, the Agency sent a letter to the Blackfeet Tribe of Montana to inquire about Father's Indian ancestry. The Blackfeet Tribe responded that L.V.A. was not on the tribal rolls and was not eligible for enrollment under the tribe's blood quantum requirement.

On November 23, 2020, Father filed a section 388 petition seeking reunification services and establishing his Indian ancestry. On December 16, 2020, the juvenile court denied Father's petition, finding that the Agency made "sufficient efforts to explore [Father's] claims of Native American Ancestry, such that at this time there is no reason to know that [L.V.A.] is an Indian child." The juvenile court also denied Father's request for reunification services.

Father appeals.

### III

### DISCUSSION

Father contends on appeal that the juvenile court and the Agency did not fulfill their duties of inquiry under the ICWA because they failed to adequately inquire into whether L.V.A. has Indian ancestry. Father also claims that the Agency's failure to provide formal notice to the Blackfeet Tribe of Montana violated the ICWA.

4

A

*Relevant Law and Standard of Review*

Congress enacted ICWA in 1978 to address concerns regarding the separation of Indian children from their tribes through adoption or foster care placements with non-Indian families. (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7, 10.) The federal statute establishes minimum standards for the removal and placement of children that are members of or eligible for membership in an Indian tribe to ensure the placements reflect the unique values of their Indian culture. (25 U.S.C. §§ 1901(3), 1902, 1903(4); *In re A.W.* (2019) 38 Cal.App.5th 655, 662 (*A.W.*).)

California adopted the main provisions of ICWA into California statutory law in 2006. (*In re Autumn K.* (2013) 221 Cal.App.4th 674, 703-704.) Following the enactment of new federal regulations concerning ICWA in 2016, California amended its own statutes, including portions of the Welfare and Institutions Code related to the notice and inquiry provisions of ICWA. (25 C.F.R. § 23.107(c); 81 Fed.Reg. 38803 (June 14, 2016); *In re Breanna S.* (2017) 8 Cal.App.5th 636, 650, fn. 7; *A.W.*, *supra*, 38 Cal.App.5th at p. 662, fn. 3; Assem. Bill No. 3176 (2017-2018 Reg. Sess.).) Those changes became effective January 1, 2019. (*A.W.*, at p. 662, fn. 3.)

The Welfare and Institutions Code now creates three distinct duties regarding ICWA in dependency proceedings. (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1051–1052 (*D.S.*).) Beginning with the initial contact, the juvenile court and the Agency have an affirmative and continuing duty to inquire whether the child may be an Indian child.

5

(§ 224.2, subd. (a); *D.S.*, at p. 1051; *In re W.B.* (2012) 55 Cal.4th 30, 53; *In re Gabriel G.* (2012) 206 Cal.App.4th 1160, 1165; Cal. Rules of Court, rule 5.481(a).) That inquiry includes, but is not limited to, asking the child's parents whether the child is, or may be, an Indian child. (§ 224.2, subd. (b).) In addition, the California Rules of Court require, at the first appearance of a parent in a juvenile dependency proceeding, that the juvenile court order the parent to fill out the ICWA-020 Parental Notification of Indian Status form. (Cal. Rules of Court, rule 5.481(a)(2)(C).) If the parent does not appear in court, the juvenile court must order the Agency to use reasonable diligence to find and inform the parent to fill out the ICWA-020 form. (*Id.*, rule 5.481(a)(3).)

If the initial inquiry creates a "reason to believe" the child is an Indian child, then the court and the Agency have a duty to make further inquiry to determine whether there is "reason to know" the child is an Indian child. (§ 224.2, subd. (e).) If there is "reason to know" the child is an Indian child, the court and Agency then have a duty to provide formal notice to any affected tribes as set forth in section 224.3. (§ 224.2, subds. (c), (d); § 224.3 [ICWA notice is required if there is a "reason to know" a child is an Indian child as defined under § 224.2, subd. (d)].)

On appeal, we review the juvenile court's ICWA findings for substantial evidence. (*D.S.*, *supra*, 46 Cal.App.5th at p. 1051; *In re Hunter W.* (2011) 200 Cal.App.4th 1454, 1467.) Where the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied. (*D.S.*, *supra*, at p. 1051.)

6

B

*Analysis*

1

*Inquiry Requirement*

The juvenile court and the Agency failed to comply with the inquiry provisions of the ICWA.

When the Agency has a reason to believe a child is an Indian child, it must satisfy three requirements. (§ 224.2.) First, the Agency must interview the parents, Indian custodian, and extended family members to gather relevant information. (§ 224.2, subd. (e)(1); see also § 224.3, subd. (a)(5).) Second, the Agency must contact "the Bureau of Indian Affairs and the State Department of Social Services for assistance in identifying the names and contact information of the tribes in which the child may be a member, or eligible for membership in, and contacting the tribes and any other person that may reasonably be expected to have information regarding the child's membership status or eligibility." (§ 224.2, subd. (e)(2).) Third, the Agency must contact "the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility." (§ 224.2, subd. (e)(2).)

### a

#### *Duty to Gather Information*

The Agency did not comply with its duty to gather relevant information from "extended family members." (§ 224.2, subd. (e)(2).) Under both ICWA and California law, "extended family members" includes the child's "grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); § 224.1, subd. (c).)

The Agency interviewed Father, spoke with his sister-in-law, and reached out multiple times to his brother. While we find no fault with the Agency's inability to connect with the brother, we note that the Agency asked the sister-in-law only about L.V.A.'s placement, not Father's Indian ancestry. Additionally, Father informed the Agency of a paternal relative named A.S. There is no indication in the record as to what her relation is to Father or whether the Agency contacted her to inquire about Father's ancestry. These are actions the Department "was required to undertake. [Citation.]" (*In re K.R.* (2018) 20 Cal.App.5th 701, 708.)

### b

#### *Duty to Identify Tribes*

The Agency also failed to comply with its duty to identify the tribes in which L.V.A. may be a member. (§ 224.2, subd. (e)(2).) Father gave inconsistent information regarding his claimed ancestry. At times, he referenced the Blackfeet Tribe and, at other times, the Blackfoot Tribe. Apparently, the Agency equated "Blackfoot" and "Blackfeet" without conducting further inquiry.

The tribal names "Blackfeet" and "Blackfoot" are often used interchangeably. (See, e.g., *In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1382, fn. 3; *In re L.S., Jr.* (2014) 230 Cal.App.4th 1183, 1197–1198 [discussing "Blackfoot/Blackfeet confusion"].) "[T]here is frequently confusion between the Blackfeet tribe, which is federally recognized, and the related Blackfoot tribe, which is found in Canada and thus not entitled to notice of dependency proceedings. When Blackfoot heritage is claimed, part of the Agency's duty of inquiry is to clarify whether the parent is actually claiming Blackfoot or Blackfeet heritage so that it can discharge its additional duty to notice the relevant tribes." (*In re L.S., supra,* at p. 1198.)

Father first claims that the Blackfeet Tribe is actually composed of four independent tribes located in Canada, Montana, and Idaho, and that the Agency should have contacted each of them separately. We disagree. An "Indian tribe" is defined as "any Indian tribe, band, nation, or other organized group or community of Indians recognized as eligible for the services provided to Indians by the Secretary because of their status as Indians, . . . ." (25 U.S.C. § 1903, subd. (8).) The Canadian tribe identified by Father—the Blackfoot Tribe—is not registered with the Secretary of the Interior or recognized by the Secretary as eligible for services provided to Indians. (*Ibid.*; Recognized Indian Tribal Entities, 86 Fed.Reg. 7554 (2021).) Because the Blackfoot Tribe has not been recognized as an Indian tribe, L.V.A. cannot be deemed an "Indian child" within the meaning of the ICWA even if she can claim membership in that tribe. (25 U.S.C. § 1903(4) [defining "Indian child" as "any unmarried person who is under age eighteen and

9

is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe . . . ."]; *In re Wanomi P.* (1989) 216 Cal.App.3d 156, 166–167 [holding that the ICWA applies only to Indian tribes located in the continental United States].)

As for the other Blackfeet Tribes located in the United States, again we note that the Agency is only required to contact those recognized by the United States. (25 U.S.C. § 1903, subd. (8).) Father does not dispute that the Blackfeet Tribe in Montana is the only federally-recognized tribe with "Blackfeet" in its name. (86 Fed.Reg. 7554.) Having already contacted that tribe, we conclude that the Agency bore no further duty to contact any other, unrecognized Blackfeet tribes.

Father also argues that the Agency should have contacted a tribe called the "Blackfoot Band of Sioux," which he claims entered into a treaty with the United States in 1865. There is support for Father's claim of a division of the Sioux called the "Blackfoot Sioux." (See *Litchfield v. United States* (Ct.Cl. 1898) 33 Ct.Cl. 203, 204 [identifying a "Blackfoot Sioux" tribe that entered into treaty negotiations with the United States in October 1865]; Treaty between the United States of America and the Lower Brulé band of Dakota or Sioux Indians, Oct. 14, 1865, 14 Stat. 699.) There is no indication in the record, however, that the Agency sought clarification from Father as to his claim of ancestry from a "Blackfoot" tribe. The record is also silent as to whether the Agency contacted "the Bureau of Indian Affairs and the State Department of Social Services for assistance in identifying the names and contact information of the tribes in which the child may be a

10

member." (§ 224.2, subd. (e)(2).) Lastly, it appears that the Agency did not contact any of the 13 recognized Sioux tribes listed in the Federal Register. (86 Fed.Reg. 7554.) The Agency, therefore, failed to conduct an adequate inquiry into Father's ancestry.

Despite the failures described, the juvenile court found that "sufficient" inquiry had been made pursuant to the ICWA and that the ICWA did not apply. Because we have concluded that sufficient inquiry was not made with respect to L.V.A.'s Indian ancestry, and there is incomplete evidence in the record that would support the court's findings, we must reverse the juvenile court's order. (See *In re N.G.* (2018) 27 Cal.App.5th 474, 484 [failure to comply with the ICWA inquiry is, as a general rule, prejudicial error requiring reversal].) The purpose of ICWA is to protect the rights of Indian children and the tribes to which they may belong, and it is therefore necessary that the juvenile court and the Agency fulfill their obligations to conduct adequate inquiry. (See *In re Alice M.* (2008) 161 Cal.App.4th 1189, 1197.)

2

*Notice Provisions*

Father next argues that the Agency failed to comply with the ICWA's notice provisions during the inquiry stage. We conclude that there was no error.

This case is governed by new federal regulations adopted in 2016 concerning ICWA compliance. (81 Fed.Reg. 38864 (June 14, 2016), revising 25 C.F.R. Part 23.) Following enactment of the federal regulations, California amended its own statutes, including portions of

the Welfare and Institutions Code related to ICWA notice and inquiry requirements. (Assem. Bill No. 3176 (2017-2018 Reg. Sess.); *A.W.*, *supra*, 38 Cal.App.5th at p. 662, fn. 3.) Those changes became effective January 1, 2019. (*A.W.*, at p. 662, fn. 3.)

Before California's 2019 amendments, the inquiry and notice requirements were both premised on the "reason to know" standard. Former section 224.3 "outline[d] the scope of a trial court's and a county welfare department's duty of *inquiry* under ICWA" (*In re J.L.* (2017) 10 Cal.App.5th 913, 919, footnote omitted), and former section 224.2 "outline[d] specific *notice* requirements that apply '[i]f the court, a social worker, or probation officer knows or has reason to know that an Indian child is involved.'" (*In re J.L.*, at p. 920.) The prior statute did not include the language "reason to believe" and instead specified that the ICWA's inquiry and notice obligations were both triggered when the juvenile court or the Agency "knows or has reason to know that an Indian child is involved." (*Id.* at pp. 919–920 [quoting former § 224.3, subd. (c) (further inquiry requirement) and § 224.2 (notice requirement)].)

The 2019 amendments introduced a new standard for the inquiry requirement. Under the present law, the juvenile court or Agency must conduct an inquiry when it has "reason to believe" that a child is an Indian child. (§ 224.2 (e)(1).) The notice requirement, on the other hand, continues to rely on whether the juvenile court or Agency "knows or has reason to know . . . that an Indian child is involved" in the dependency proceedings. (§ 224.3, subd. (a).) Thus, at the inquiry

stage, the Agency is not required to provide notice until it has a "reason to know"—rather than a "reason to believe"—that the child is an Indian child.

A "reason to believe" exists "whenever the court, social worker, or probation officer has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe. Information suggesting membership or eligibility for membership includes, but is not limited to, information that indicates, but does not establish, the existence of one or more of the grounds for reason to know enumerated in paragraphs (1) to (6), inclusive, of subdivision (d)." (§ 224.2, subd. (e)(1).) A "reason to know" exists under any of the following circumstances: "(1) A person having an interest in the child, including the child, an officer of the court, a tribe, an Indian organization, a public or private agency, or a member of the child's extended family informs the court that the child is an Indian child; [¶] (2) The residence or domicile of the child, the child's parents, or Indian custodian is on a reservation or in an Alaska Native village; [¶] (3) Any participant in the proceeding, officer of the court, Indian tribe, Indian organization, or agency informs the court that it has discovered information indicating that the child is an Indian child; [¶] (4) The child who is the subject of the proceeding gives the court reason to know that the child is an Indian child; [¶] (5) The court is informed that the child is or has been a ward of a tribal court; [and] [¶] (6) The court is informed that either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe." (§ 224.2, subd. (d).)

While the Agency had a "reason to believe" that L.V.A. was an Indian child, none of the circumstances identified in section 224.2, subdivision (d), were present in this case. That is, the Agency had not yet gathered sufficient information to give it a "reason to know" that L.V.A. is an Indian child. Therefore, its duty to provide notice was not yet triggered. There is a possibility that, on remand, additional information may be discovered that would satisfy one or more of the criteria in section 224.2, subdivision (d), thereby triggering the notice requirement. However, at the inquiry stage and on the record before us, the Agency was not required to submit formal notice.

## DISPOSITION

The juvenile court's order finding that the ICWA is not applicable and denying Father's section 388 petition is conditionally reversed, and the matter is remanded to the juvenile court with directions to the Agency to complete the ICWA inquiry with respect to L.V.A. If, after the Agency does so, the juvenile court finds that L.V.A. is an Indian child, the juvenile court shall proceed in conformity with ICWA. If the court finds that L.V.A. is not an Indian child, the court's order denying Father's section 388 petition shall be reinstated.

McCONNELL, P. J.

WE CONCUR:


BENKE, J.


GUERRERO, J.

15